## Louisville & N. R. Co. v. Kilburn.

(Decided Feb. 8, 1938.)

ASHBY M. WARREN and J. MILLER WHITE, C. S. LANDRUM and CRAFT & STANFILL for appellant.

NAPIER & EBLEN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

The appeal is from a $1,000 judgment for personal injuries.

Appellee's evidence is as follows: At the time of the accident she lived at Chavies, and had lived there for 15 years. She was familiar with the premises around the railroad station. On the morning of March 13, 1934, she went to the station to take the train for Hazard. It was dark at the time. Between the main-line track and the station there is a house track used for loading and unloading freight. On the morning of the accident there was in front of the station a box car. The upper end of the box car was some 10 or 12 feet below the station. There were two lights there that morning. She guessed it is about 10 feet between the rails of the main track and the house track. Passengers get on the train 100 yards below the waiting room door. The train coming up toward Hazard pulls completely up above the depot, and the baggage car stops in below the waiting room. The pathway to the train was completely dark. The box car was in front of the depot and prevented the light from shining on the path that you traveled to get on the train. There were from 45 to 50 people who got on the train. They were all ganged up there and pushing and trying to get on the best they could. At the time she received the injury it was dark. Some part of the engine hit her in the side above her hip. She could not see the train as they came between the cars. It was completely dark, and it seemed like the train whipped right fast and hit her. It blew one time as it hit her. She was knocked unconscious.

After describing her injuries, she testified on cross-examination as follows: The first thing that attracted her attention to the approaching train was a man who came into the depot and said the train was coming. The train was 200 or 250 yards away. They came through the waiting room door to the screenings or the platform and crowded out the best way they could. After

they came out across the house track and turned down, she saw the train maybe 250 or 300 yards away, and then started toward the approaching train. She did not go over 10 or 12 steps until the train struck her. She did not know whether she told the jury the headlight was not burning. "It seemed like it was dim." She "could not see the headlight." She believed that she said in her deposition that she saw the headlight quite a distance, but it blinded her. On being asked to say whether the headlight blinded her, or that the headlight was so dim that she could not see, she said, "It was dim, or either it blinded her—anyway it did not give us any light." The whistle blew just as it struck her. If she had not gotten so close to the engine it would not have struck her, but she could not see. On being asked by the judge, "Do you know what caused you to get in the way of the train?" she said, "Yes, sir; it was because we could not see, and we were crowded so bad that I must have misjudged my step." Lena Moore, who was present at the time of the accident, testified as follows: There is a track between the main line track and the station waiting room called the house track, and it is used to set cars on to load and unload them. She supposed the distance between the two tracks was something like 6 feet. The only place they had to walk was between the two tracks. The railroad company maintains two lights on the depot. The box car was between the lights and the mainline track. There were about 40 people pushing and crowding, and each one trying to get on first. She thought the train was coming unusually fast. She was in front; and, after the engine passed her, it gave two or three quick sounds. Several people helped Mrs. Kilburn up. Mrs. Kilburn was confined to the house a long time.

C. T. Long, the engineer in charge of the engine at the time of the accident, testified as follows: The train was due at Chavies about 5 o'clock, and may have been two or three minutes late. It was dark still, but was beginning to get light a little. There was an electric headlight on the engine and it was burning bright. As he approached the depot, he blew the whistle at the customary point, which is about one-eighth of a mile from the depot. The bell was ringing and they were going about eight miles an hour. There was quite a

number of people on the platform moving northward to where the passenger coach stops. It was usual to stop the coaches a car length or a little over below the waiting room, and to stop the engine about a car length above the waiting room. In the crowd of people who were walking toward the place where they received and discharged passengers was a large lady walking behind a smaller lady. They were both in the clear, and just before the engine got to the large lady she made a step too close to the track. He grabbed the whistle with his right hand, the emergency brake with his left hand, and stopped the train within 15 or 20 feet. There was nothing else that he could have done. If it had not been for the accident, he would have gone about a car length and a half further. The pilot beam, which is the extreme front of the engine, struck the lady.

On cross-examination he testified as follows: The platform was of white limestone screenings. It was built for the accommodation of people getting on or off the train. There was about 11 feet between the two tracks, and the train extends out over the ends of the ties about 14 or 16 inches. Appellee was walking near the rear of the crowd, which numbered 40 or 50 people.

Numerous grounds are urged for reversal, but, in view of the conclusion of the court, only two need be considered.

The petition sought a recovery on the ground that:

"The defendants, through its agents, servants and employees while engaged in the business of running and operating an engine and train of cars attached thereto in and around the town of Chavies, Perry County, Kentucky, negligently and carelessly, and with gross negligence and carelessness ran its engine against this plaintiff, thereby bruising, cutting and crushing this plaintiff. * * *"

In addition to other instructions which need not be set out, the court by instructions 1 and 2 told the jury in substance that, if it had been customary for those waiting to board the southbound train of the defendant at Chavies, Ky., to start walking down the track to a point where passengers were received on the train, and before the train came to a stop, and defendant knew of

the custom, then it was the duty of the defendant to provide and keep sufficient room between the track on which the passenger train traveled and its depot to prevent injuries to those so doing by being crowded or pushed or shoved into the way of the moving train, and, if the jury believed from the evidence that the defendant failed to observe and perform that duty, and as a direct and proximate result thereof plaintiff, while attempting to board the train, was shoved and forced into the path of the moving train, and was struck and injured thereby, they should find for the plaintiff. It will be observed that the only failure of duty relied on was the negligent operation of the train, while the only negligence submitted to the jury was the failure to provide and keep sufficient room between the track and the depot to prevent those intending to take the train from being injured by being crowded and pushed or shoved into the way of the moving train. In the first place, there was no evidence whatever that the train was negligently operated. In the next place, the failure to provide sufficient room between the track and the depot to prevent injuries to persons intending to take the train was not relied on as a ground of recovery, and there was no evidence tending to show that the space in question was insufficient, or that appellee's injuries were caused by her being shoved or forced into the path of the moving train. In short, the case pleaded was not proved, and the case submitted to the jury was neither pleaded nor proved, and, that being true, it was error to submit the case to the jury. South Covington & C. S. Railway Company v. Schied, 186 Ky. 452, 217 S. W. 124.

But we have to go further. Not only was appellee told that the train was approaching, but she admits that she saw the engine when it was 250 or 300 yards away. The headlight on the engine was burning, and all that she had to do in order to see the engine was to use her eyes. It is true that appellee says that the headlight was either so dim that she could not see it, or that it blinded her, but it is at once apparent that the statement not only bears the mark of inconsistency, but is more of an excuse than a statement of fact, and cannot be regarded as having any probative value. Appellee had plenty of room in which to walk, and, as before

stated, no one pushed or shoved her into the path of the train. In its final analysis the case is one where appellee, with plenty of room in which to walk, failed to use ordinary care to keep out of the way of the engine which she knew was approaching, and could not fail to see. It follows that appellant was also entitled to a peremptory instruction on the ground that appellee was guilty of contributory negligence as a matter of law. Louisville & Nashville Railroad Company v. Taaffe's Adm'r, 106 Ky. 535, 50 S. W. 850, 21 Ky. Law Rep. 64; Townsend v. Houston Electric Company, Tex. Civ. App., 154 S. W. 629.

Judgment reversed and cause remanded for a new trial consistent with this opinion.