## RATLIFF v. CHESAPEAKE & O. RY. CO.

### No. 8356.

Circuit Court of Appeals, Sixth Circuit.

Dec. 13, 1940.

A. F. Childers, of Pikeville, Ky., for appellant.

LeWright Browning, of Ashland, Ky., for appellee.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

Appellant, as administrator, brought suit in the Circuit Court of Pike County, Kentucky, to recover damages resulting from his wife's death, alleged to have been caused by appellee's negligence. The suit was removed to the United States District Court on the ground of diversity of citizenship. Appellee specifically denied each of appellant's allegations and alleged that the death was caused solely by deceased's negligence. At the close of appellant's opening statement to the jury, the

Court, upon motion, directed a verdict in favor of appellee. Appellant challenges the validity of that ruling and the judgment entered upon the verdict. On this appeal, the facts stated and such inferences as may reasonably be drawn therefrom must be considered proved.

Appellee has a branch railroad in Pike County, Kentucky, on which there has been for some twenty years a flag stop known as Ratliff. There is no depot of any kind at this stop, but there is an elevated flat cinder surface, which appellant calls a "platform," on a level with the top of the tracks, where passengers alight from and board trains. Originally, the cinders were enclosed in a rectangular frame of 8" x 8" timbers, which was 18 or 20 inches from the ends of the ties. The timbers eventually rotted, however, and, six months or a year before Mrs. Ratliff was killed, appellee, by spreading a carload of cinders, leveled and enlarged the surface, filling in the space right up to the rails. From this "platform" passengers signalled trains as they approached. The engineer usually indicated his recognition of the signal by two short blasts of the whistle.

Appellant and his wife lived about a hundred yards from the station. On the morning of March 14, 1937, Mrs. Ratliff left home, intending to board the 6:27 train for Pineville. It was after daylight. She was on the platform as the train approached, "trying to flag it and going towards it." For some reason she was not observed, though the engineer could have seen her some thousand feet away. No effort was made to stop the train, the whistle was not blown, and the bell not rung; but the train "came out of there at the same rate of speed that they did at a place where there was no station." Mrs. Ratliff was struck by a big square timber across the front of the engine, known as the crossbeam, which projects out over the rails a foot and a half or two feet on each side. She died instantly.

Counsel for appellant in his opening statement said: "This woman in trying to flag that train had walked up this platform here and got in range of that crosshead, evidently thinking that she was safe anywhere on the platform, and she had been all the time since this platform had been built and maintained there for many years, and people on it were clear of trains; but on this occasion in trying to flag that train she got too close on the platform and was struck by this large wooden beam in front of the locomotive."

The alleged proximate cause of decedent's death was appellee's negligent construction of "said platform too near the railroad track and so close thereto that persons upon said platform and at a place where they had a right to be, could be struck by passing trains," and running the train "at a high, dangerous and excessive rate of speed by said station, without ringing a bell or blowing a whistle or giving any signal of its approach, and without keeping any lookout for persons on or about said station, and without making any effort to stop for the purpose of taking on passengers, or for any purpose, and while * * * decedent was at a place on said platform where she had a right to be, and while using reasonable care for her own safety, and for the purpose of going aboard said train."

Appellant has characterized the so-called platform as a "death trap," and has argued that it may not be assumed that the deceased knew any part of a locomotive engine extends over the rail or that she might be hit by a passing train while standing on any part of the "platform." Yet she had lived for years within about a hundred yards of the spot and could not have been unfamiliar with the platform and the trains that passed daily. Moreover, it was daylight when the unfortunate accident occurred, and if she was not already familiar with both the trains and the new "platform," she could not have failed to see, as the train approached, that she would be struck if she did not move farther away from the track. Appellant asserts, however, that she was unaware that there could be any danger if she stood on any part of the "platform" while a train was passing and contends that it was appellee's duty to have so constructed the "platform" that she could not stand on any part of it and be struck by any part of a passing train. The duties placed by the law upon public carriers of passengers are onerous but they assume that those who have eyes to see will use them.

The primary purpose of the "platform" is to provide a smooth surface for the convenience and safety of the public in boarding and alighting from trains. It is not claimed that the "platform" was defective in any respect except that there was no space between it and the track. None of the cases cited by appellant holds

that such a facility as is here involved,— entirely adequate and safe when used as ordinary persons would use it,—is unsafe merely because it does not prevent careless persons from putting themselves in positions of danger. There was no negligence in the construction and maintenance of the "platform."

■ Nor was failure to blow the whistle or ring the bell negligence proximately contributing to the death, since appellant's counsel stated that she saw the train and was signalling it. Nor was the engineer's failure to keep a lookout or slow down or stop a proximate cause. Had he seen Mrs. Ratliff, he might have stopped the train, but she had no reason to expect that the train would stop before it reached the spot where she was standing; the engine always passed that place, when making a stop, to bring the passenger coaches alongside the "platform." It was her failure to move back from the track, as anyone exercising any care at all would have done, that caused her death. Had the engineer seen her when she first signalled and had he then noted her position of danger, he would have been entitled to assume that she would make the step backward to safety before the engine reached her. By the time he could have known that she was not aware of her danger, or that she was not going to extricate herself therefrom, it would have been too late to stop his train before the engine reached her.

■ A jury that found all the facts stated in appellant's opening statement could not have found that appellee was guilty of any negligence that proximately contributed to the deceased's death; but, if it had, and had not also found that the deceased was contributorily negligent, it would have been the judge's duty, upon proper motion, to enter judgment for appellee notwithstanding the verdict.

We think the Kentucky decisions abundantly support this conclusion.

In Bruff v. Illinois Central R. R. Co., 121 S.W. 475, 477, 24 L.R.A.,N.S., 740, the appellant was injured at a flag station in the nighttime, while attempting to signal an approaching train. He was standing so close to the track that his outstretched arm was struck by some part of the train. In denying recovery, the Court of Appeals of Kentucky said: "Appellant having placed himself in a position of peril, and having stayed there from whatever cause

until it was too late to extricate himself and not warning those in charge of the train in time to allow them an opportunity to stop or check the train to save him, his injury is the result of his own act, not their negligence. These facts presented only a question of law; that is, admitting them as true, and deducing from them every possible reasonable inference was there actionable negligence on the part of the railroad operatives? The trial court thought there was not. So think we."

In another case, plaintiff, with a number of other passengers intending to board defendant's train, walked between the tracks from the waiting room to the place where passengers usually boarded the train. Plaintiff got too close to the track and was struck by the approaching train. The trial judge refused to direct a verdict and the jury found for the plaintiff. Holding that plaintiff's negligence barred recovery, the Court of Appeals said: "Not only was appellee told that the train was approaching, but she admits that she saw the engine when it was 250 or 300 yards away. The headlight on the engine was burning, and all that she had to do in order to see the engine was to use her eyes. * * * Appellee had plenty of room in which to walk, and, as before stated, no one pushed or shoved her into the path of the train. In its final analysis the case is one where appellee, with plenty of room in which to walk, failed to use ordinary care to keep out of the way of the engine which she knew was approaching, and could not fail to see. It follows that appellant was also entitled to a peremptory instruction on the ground that appellee was guilty of contributory negligence as a matter of law." Louisville & Nashville R. R. Co. v. Kilburn, 272 Ky. 44, 113 S.W.2d 844, 847.

See also Louisville & Nashville R. R. Co. v. Fentress' Adm'r, 166 Ky. 477, 179 S.W. 419; Louisville & Nashville R. R. Co. v. Taaffe's Adm'r, 106 Ky. 535, 50 S.W. 850; Louisville & Nashville R. R. Co. v. Trower's Adm'r, 131 Ky. 589, 115 S.W. 719, 20 L.R.A.,N.S., 380.

Judgment affirmed.

HICKS, Circuit Judge (dissenting).

I think the case should have been submitted to the jury. I do not think that Mrs. Ratliff was guilty of contributory negligence as a matter of law. She lived with-

in 150 yards of the station, which consisted of a cinder platform, with the cinders extending to, and on a level with, the top of the rail.

The verdict was directed upon the statement of appellant's counsel. One may gather from it that Mrs. Ratliff was standing on the platform when she heard the train coming. She was trying to flag it as it approached. There is an inference that she commenced to flag in ample time for the engineer to stop the train at the station. It was his duty to acknowledge her signal by two short blasts of the whistle. He did not, although his vision was unobstructed. He never saw her at all until he reached the end of the platform and made no effort to stop the train or to lessen its speed. Confronted with this situation Mrs. Ratliff walked along the platform toward the approaching train, and, looking in the direction of the engineer, continued to try to attract his attention. As she walked, the left side of her body came within the sweep of the train and her left shoulder was struck by the crossbeam of the pilot. She was not run over but the impact threw her body to the platform.

I think that in determining whether she was guilty of contributory negligence in allowing herself, wittingly or unwittingly, to come slightly within the danger zone while still signalling, consideration must be given to whether she found herself in an emergency, brought on by the prospect of missing her train altogether, and to whether the fact that the platform had no curb or mark indicating the line between safety and danger, was confusing to her. It seems to me that these matters were peculiarly for determination by a jury.

Furthermore, I think that the court might well have said to the jury that the engineer was negligent. It was his positive duty to keep a lookout for the signals of prospective passengers on the platform, to respond with the whistle and to stop the train. He failed to do so and the inescapable conclusion is that he was not looking. Had he discharged his duty Mrs. Ratliff would have had no occasion to continue her efforts to attract his attention, and in any event he would have seen her as she entered the danger zone; and a jury might reasonably conclude that a blast from the whistle would have caused her to jump to safety, for it was only inches away.

I think that the question of proximate cause was for the jury under appropriate instructions. These views do not seem to me to be necessarily in conflict with the cited Kentucky decisions.