**Rita M. FEARSON, Administratrix, Plaintiff,**

v.

**JOHNS–MANVILLE SALES CORPORATION, et al., Defendants.**

**Civ. A. No. 80–1168.**

United States District Court,
District of Columbia.

Oct. 28, 1981.

---

John F. Mahoney, Jr., Washington, D. C., for Owens-Corning Fiberglas Corp.

Leslie H. Wiesenfelder, Washington, D. C., for GAF Corp.

William G. McMurtrie, Vienna, Va., for Celotex Corp.

James Baer, Silver Spring, Md., for Southern Textile Corp.

Peter C. DePaolis, Washington, D. C., for plaintiff.

Francis X. Quinn, Adams Law Center, Rockville, Md., for Keene Corp.

James C. Gregg, Washington, D. C., for Pittsburgh Corning Corp.

Paul F. Sheridan, Arlington, Va., for Fiberboard.

Charles E. Channing, Jr., Upper Marlboro, Md., for Eagle-Picher Industries, Inc.

Robert P. Watkins, Williams & Connolly, Washington, D. C., for Raybestos-Manhattan, Inc.

John Jude O'Donnell, Washington, D. C., for Unarco Industries, Inc.

Robert E. Scott, Jr., John H. Mudd, Baltimore, Md., for Johns-Manville Sales Corp.

Kevin J. McCarthy, Upper Marlboro, Md., for Forty-Eight Insulations, Inc.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This matter is before the Court on defendants' joint motions for summary judg-

ment. The defendants first move for summary judgment on the ground that plaintiff's claims are barred by the three-year statute of limitations. Defendants also move for summary judgment on the ground that § 33(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., (adopted as D.C. Workers' Compensation Act, 36 D.C.Code § 501 et seq.) bars the bringing of this action by the plaintiff widow due to a settlement agreement which was entered into pursuant to the decedent's workmen's compensation claim. The Court, for the reasons stated herein, finds that although there is no genuine dispute as to any material issues of fact, the defendants are not entitled to judgment as a matter of law on either ground and accordingly denies summary judgment.

## I. FACTS OF THE CASE

A brief summary of the facts which are relevant to these motions is as follows. Joseph Fearson, deceased, was employed as an asbestos insulation installer from 1936 to 1977 in the District of Columbia. In early 1973, Mr. Fearson was informed by a physician that he had "mild asbestosis." On April 9, 1973, plaintiff's attorney filed a claim with the District of Columbia Workers' Compensation Programs (WCP). On November 29, 1976, Mr. Fearson was paid $50,000 in settlement of his claim for workmen's compensation benefits for his asbestosis. On November 30, 1977, Mr. Fearson retired, in part because his health had deteriorated as a result of his asbestosis. On March 16, 1979, decedent was admitted to the hospital, complaining of chest pain, and was diagnosed as having bronchogenic carcinoma (lung cancer), and was discharged for chemotherapy treatment. Joseph Fearson died on May 23, 1979, at the age of 57. On May 7, 1980, plaintiff filed her survival and wrongful death actions based upon decedent's death due to bronchogenic carcinoma.[1]

## II. STATUTE OF LIMITATIONS

The defendants' first argument is that plaintiff's "survival" claim is time-barred under the law of the District of Columbia, which provides that the general period of limitations is three years. *See* D.C.Code § 12–301(8) (1973).[2] Defendants argue that the decedent's claim first accrued in 1973 when he was diagnosed as having asbestosis, even though he was not aware of the future development of lung cancer which was to be diagnosed in 1979. Defendants further argue that their alleged wrongful act gives rise to only one cause of action, and that the plaintiff should not be allowed to "split the tort" and create separate causes of action. This is based on their allegation that

> "decedent's cancer is in reality a further maturation of the harm to Mr. Fearson from his exposure to asbestos, which harm just manifested itself not later than 1973 in the form of asbestosis. Consequently, only a single and indivisible cause of action arose from that exposure to asbestos and the time to sue thereon began to run not later than February 12, 1973, when asbestosis was diagnosed."

*See* Defendants Joint Motion for Summary Judgment, September 15, 1981, p. 18–19.

Plaintiff, on the other hand, argues that the date on which the statute of limitations began to run is the date bronchogenic carcinoma was diagnosed, which was March 16, 1979. She claims that since asbestosis and bronchogenic carcinoma are independent diseases, the fact that Mr. Fearson was diagnosed as having asbestosis in 1973 has no bearing upon plaintiff's causes of action which are based upon injury and death due

---

1. Plaintiff's complaint states that her claims are based on both asbestosis and bronchogenic carcinoma. *See* complaint p. 7. However, at oral argument, counsel agreed to limit this action to the claims based on decedent's bronchogenic carcinoma.

2. As a derivative action, the statute of limitations would begin running as to the plaintiff widow when the right of action first accrues to the defendant. *See Jones v. Rogers Memorial,* 442 F.2d 773, 774, n.1 (D.C.Cir.1971); *Thomas v. Doyle,* 187 F.2d 207, 209 (D.C.Cir.1950).

to bronchogenic carcinoma. The Court agrees.[3]

■ Under the "discovery rule" which has been applied in both cases of medical malpractice and latent occupational diseases, the statute of limitations begins to run when the plaintiff learned, or in the exercise of reasonable diligence could have learned, that his injuries were caused by defendants' actions. See Grigsby v. Sterling Drug, Inc., 428 F.Supp. 242, 243 (D.D.C. 1975), aff'd without opinion, 534 F.2d 417 (D.C.Cir.1976). In Grigsby, the plaintiff suffered a hearing loss due to her use of a drug manufactured by the defendant. In 1968, she knew of her hearing loss, yet she did not file suit until 1974 when the condition had become more severe. The Court held that because she knew of the injury in 1968, the statute began running at that time and therefore the action was barred.

■ In the instant action, however, the decedent did not know that he had bronchogenic carcinoma until it was diagnosed in 1979. Plaintiff's supporting affidavits make it clear that bronchogenic carcinoma and asbestosis are completely separate and distinct diseases. Under defendants' theory, plaintiffs would be forced to come into Court as soon as any minimal problem is diagnosed and seek speculative damages as to any other injuries that might develop in the future. Plain common sense teaches that the law was never meant to be so unreasonable.[4]

## III. SECTION 33(b) OF THE LONGSHOREMEN'S AND HARBOR WORKERS' COMPENSATION ACT

■ Defendants' second argument is that plaintiff's claims are barred by section 33(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., adopted as the D.C. Workers' Compensation Act, 36 D.C.Code § 501 et seq., which provides that:

> acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all rights of the person entitled to such compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such an award.

Defendants argue that plaintiff is barred by this provision because on November 29, 1976, an agreement was entered into between Joseph Fearson, his employer and insurer, which settled his workmen's compensation claim for $50,000. Therefore, because decedent did not bring suit within six months of such a settlement, they argue that the action is now barred. Rodriguez v. Compass Shipping, Ltd., —— U.S. ——, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981). Defendants further argue that even though there was no formal compensation award here, the fact that the claimant accepted compensation is enough to fall within the meaning of § 33(b) as an "award in a compensation order." In so arguing, the defendants chiefly rely on the Fourth Circuit's opinion in Liberty Mutual Insurance Company v. Ameta, 564 F.2d 1097 (4th Cir. 1977) wherein the Court found that the absence of a formal compensation order was not determinative of whether this provision should apply, but rather the focus "should be upon an act or ratification of compensation, whether formal or informal, and the subse-

---

**3.** Based on the Court's determination that the plaintiff's survival action was brought within the applicable limitation period, it is not necessary to reach the issue whether the wrongful death statute creates a separate cause of action or whether a condition precedent to the maintenance of a wrongful death claim is the ability of the defendant at time of death to have maintained the action had he lived.

**4.** The plaintiff's illustration of this point by way of a hypothetical clarifies this reasoning. Sup-

pose an individual takes a drug which causes a skin rash which disappears in a few days and no legal action is brought because of the minimal harm caused. Years later, the individual discovers that he or she has cancer which resulted from use of the same product. Under the defendants' theory, the failure to sue for the skin rash would bar the suit for cancer. This exceeds the bounds of common sense as well as sound legal reasoning.

 

quent acceptance of compensation by the claimant." The Court found that payment and acceptance of compensation along with filing of four forms with the OWCP constituted an "award" under the Act.

Plaintiff, however, argues that based on the facts of this case, there was not an "award in a compensation order" within the meaning of § 33(b), and that, therefore, there was no assignment of claimant's rights and the action is not barred. This Court agrees. In the *Rodriguez* case, the Supreme Court never reached the issue of what constituted an "award in a compensation order;" however, the Second Circuit affirmed the trial court's determination that the plaintiff had received an award based on the facts presented. The Court found that the parties clearly intended that the settlement be finalized by the issuance of a compensation order and so stated in the settlement agreement. The trial court noted that it was "apparent from the agreement itself that the parties were determining the terms of a compensation order, which order it anticipated was to issue shortly thereafter." *Rodriguez v. Compass Shipping Co., Ltd.*, 456 F.Supp. 1014, 1020 (S.D.N.Y.1978).

In the instant action, the settlement was a voluntary one between the claimant, the employer and the insurer. It did not involve the OWCP or the Department of Labor in any way. There is no indication in the agreement that it was intended to be an "award" or that a formal order was to later be issued, nor was the settlement ever submitted for approval by the Deputy Commissioner, an Administrative Law Judge, or by the Benefits Review Board. The statute clearly requires such approval.

The only authority for a finding by this Court that this settlement agreement constitutes an "award in a compensation order" is the *Liberty Mutual* case. However, as Judge Oberdorfer noted in the case of *Collier v. Mendis, Inc.*, 526 F.Supp. 459 (D.D.C.1981), *Liberty Mutual* is inconsistent with both the language and policy of the Act. Congress never intended for the mere acceptance of funds to be sufficient to

trigger an assignment of claimant's rights; the six-month period was meant to increase employees' rights, not restrict them. Therefore, this Court is in agreement with the *Collier* decision and those other courts that have rejected the *Liberty Mutual* holding. *See Dunbar v. Retla Steamship Co.*, 484 F.Supp. 1308 (E.D.Pa.1980); *Sea Quest Marine, Inc. v. Cove Shipping, Inc.*, 474 F.Supp. 164 (W.D.Wash.1979).

An Order in accordance with the foregoing shall be issued of even date herewith.