Lauriat, J.
Patricia Dolan (“Dolan”) brought this action to recover damages for injuries, including tongue cancer, that she alleges resulted from her eight-month exposure in 1989 to photocopy machines manufactured by the Eastman Kodak Company (“Kodak”) in an unventilated room at her workplace in a building owned by Bedford Building Associates (“Bedford”) and managed by Bay Management Group, Inc. (“BMG”). The defendants have moved for summary judgment on several grounds. For the reasons set forth below, the defendants’ motion is allowed.
BACKGROUND
Dolan is forty-eight years old. From 1970 until 1983 she worked for New England Telephone Company in various capacities; from 1983 until the events at issue in this lawsuit, she was an employee of American Telephone and Telegraph Co. (“AT&T”). In January 1989, Dolan was assigned by AT&T to work in the photocopy room in the basement of the company’s office at 99 Bedford Street in Boston, a building owned by Bedford and managed by defendant BMG. This photocopy room contained two Ektaprint Industrial Copy Machines manufactured by Kodak. Dolan’s duties in this room included making approximately 6,000 copies per day.
Taking the facts, for the purposes of this motion, in the light most favorable to Dolan, it can safely be said that the conditions in the photocopy room at 99 Bedford Street were hardly the kind under which most people would likely choose to work. It appears that the ventilation system in the room did not work, and that there was no mechanism in place for removing stale air and replacing it with fresh air. The room was small for its purpose, and sparsely furnished, and the two copy machines it contained were massive (each cost roughly $70,000), and apparently operating constantly.
By late February or early March of 1989, after she had been working in this room for one or two months, Dolan began experiencing flu-like symptoms. Between March and August, 1989, she suffered from congestion, dizziness, upset stomach, headaches, nausea, diarrhea, numbness, respiratory problems, flushing, chills, light-headedness, cold sweats, weakness, sneezing, cramps, and nose bleeds. She spoke with a number of health care professionals as well as AT&T management, and on August 31, 1989, she ceased working in the photocopy room at 99 Bedford Street. She was moved to a receptionist position at AT&T offices on 2 Devonshire Street, also in Boston, where she experienced some difficulties with heavy cigarette smoking by other employees in her work area. Eventually, as illnesses overwhelmed her, she became unable to work.
On July 3, 1990, Dolan filed a worker’s compensation claim against AT&T with the Commonwealth’s Department of Industrial Accidents. She sought to recover for temporary total disability between January 25 and June 25, 1990, alleging that “(p]oor ventilation, etc., in work area led to environmental illness of multi-chemical sensitivity syndrome,” known as MCSS. Solely on the issue of MCSS, her claim proceeded to a hearing before Administrative Judge William Cleary on June 11, 1991. On May 11,1992, Judge Cleary issued a ruling in which he denied Dolan’s claim. He wrote:
I conclude that the Employee has failed to meet her burden in proving that she sustained a work related industrial accident that is compensable within the meaning of the [Worker’s Compensation] Act ... I do not believe that the Employee had the condition described as Multiple Chemical Sensitivity Syndrome . . .
Report of Adm. Judge of the Department of Industrial Accidents (Judge Cleary) at 41.
*658 In Januaiy 1992, Dolan was diagnosed with squamous cell carcinoma of the tongue, more commonly known as tongue cancer. This relatively rare cancer can be extremely dangerous. In Dolan’s case it had already spread to her lymph nodes and neck by the time it was diagnosed. She underwent surgery to remove her lymph nodes and portions other tongue and neck. Fortunately this treatment, though undoubtedly extremely distressing for her, appears to have been successful, and Dolan so far has survived this terrible disease.
Dolan’s tongue cancer, although diagnosed before Judge Cleary’s ruling in her worker’s compensation proceeding, was not raised or addressed in that hearing. On August 12, 1992, Dolan brought the present action in Superior Court to recover damages for her tongue cancer, as well as for injuries to her immune system, both of which she claims were caused by her exposure to the copy machines at 99 Bedford Street. Dolan has settled her claims against several of the original defendants; only three now remain — Bedford, BMG, and Kodak. These three defendants have moved for summary judgment on three alternative grounds: (1) that Dolan’s action is barred on statute of limitations grounds; (2) that Dolan is collaterally estopped, by the adverse worker’s compensation ruling, from relitigating the issue of the defendants’ liability for her injuries; and (3) that the theory and methodology underlying her expert witnesses’ proposed testimony on the causation of her injuries is scientifically invalid. In conjunction with this last argument, the defendants have moved to exclude the testimony of Dolan’s expert witnesses on causation, and to strike affidavits submitted by two of her experts. The court will address these arguments in turn.
DISCUSSION I. Statute of Limitations
It is undisputed that Dolan’s claims in this case, all of which sound in tort, are subject to a three-year statute of limitations. To avoid having her claims barred by the statute of limitations, a tort plaintiff must file her complaint within three years of the time she knows or has notice that she has been harmed by the actions of the defendant. Dolan has alleged that her immune system damage and tongue cancer were caused by her exposure to the photocopy machines at 99 Bedford Street in 1989. Defendants assert that since Dolan had experienced symptoms of harm from her exposure to the copiers as early as February or March 1989, and had attributed those symptoms to the machines within a short period thereafter, the filing of her complaint in August 1992 was more than three years from the time her claims accrued.
As to Dolan’s claims of immune system damage, the defendants’ argument is persuasive. It is undisputed that symptoms of the illness that developed into Dolan’s immune system damage had manifested themselves well before August 1989, and that Dolan was aware before then that those symptoms had possibly been caused by the copy machines. The symptoms she suffered before August 1989, and the immune system damage she now alleges, are too similar to be considered as separate and distinct illnesses. Dolan’s claims of immune system damage are therefore barred by the statute of limitations.
Defendants, however, also contend that Dolan’s claims for cancer are time-barred, even though she did not learn that she had cancer until Januaiy 1992, only seven months before she filed suit. This argument of defendants must fail. In Olsen v. Bell Telephone Laboratories, Inc., 388 Mass. 171 (1983), the Supreme Judicial Court ruled, inter alia, that a tort plaintiffs cause of action for permanent bronchial asthma accrued when he first learned he had asthma, not when the condition was eventually diagnosed as being permanent. In reaching this conclusion, the Court reasoned that “since Olsen’s claim relates to a single disease, bronchial asthma, it is distinguishable from cases in which the plaintiffs suffer successive, but distinct, injuries, which may give rise to separate causes of action.” 388 Mass. at 176. The Court then cited with approval the federal case of Fearson v. Johns-Manwille Sales Corp., 525 F.Supp. 671 (D.D.C. 1981).
In Fearson, the plaintiff, who had been an asbestos insulation installer for 41 years, developed asbestosis, a form of pneumonia caused by exposure to asbestos fibers, in 1973. In 1979, he was diagnosed with lung cancer, and shortly thereafter he died. In 1980, his wife filed an action based on his injuries. The defendant argued that as Fearson’s asbestosis and lung cancer had both arisen from the same exposure to asbestos, his cause of action for both injuries accrued at the time (1973) he became aware of any injury produced by the defendant’s actions. The court rejected this argument, stating
. . . the decedent did not know that he had [lung cancer] until it was diagnosed in 1979 . . . [u]nder defendants’ theory, plaintiffs would be forced to come into Court as soon as any minimal problem is diagnosed and seek speculative damages as to any other injuries that might develop in the future. Plain common sense teaches that the lawwas never meant to be so unreasonable.
525 F.Supp. at 674. This reasoning applies equally in the instant case. Dolan had no way of knowing she would develop tongue cancer until January 1992. Cancer is a separate and distinct affliction from MCSS and immune system damage. Therefore Dolan’s claims for injuries resulting from cancer are timely.
II. Collateral Estoppel
The defendants further argue that the doctrine of issue preclusion, or collateral estoppel, should prevent Dolan from now bringing suit for her cancer injuries. They contend, essentially, that the issue of whether Dolan’s cancer was caused by her exposure to the copiers at 99 Bedford Street was resolved in the worker’s compensation proceeding, in which Administrative Judge Cleary ruled “that the Employee has *659 failed to meet her burden in proving that she sustained a work related industrial accident that is compensable within the meaning of the [worker’s compensation] Act.” This ruling, the defendants contend, should prevent Dolan from now litigating the issue of the causation of her cancer.
There is no question that rulings arising out of worker’s compensation proceedings may be given pre-clusive effect in Superior Court. See Martin v. Ring, 401 Mass. 59 (1987). In addition, there is no reason the current defendants may not avail themselves of the earlier judgment simply because it was obtained by a different party, AT&T. See Brunson v. Wall, 405 Mass. 446, 451 (1989) (allowing defensive non-mutual collateral estoppel where the party precluded had a “ ‘full and fair opportunity to litigate the issue in the first action . . .’ ”) (citations omitted).
Issue preclusion, however, is only available where “an issue of fact or law is actually litigated and determined’ in the previous action. Martin v. Ring, 401 Mass. 59, 61 (1987) (internal quotation marks and citations omitted) (emphasis added). The ruling of Administrative Judge Cleary addressed only the issue of whether Dolan had suffered MCSS as a result of the actions of AT&T. The word cancer is not mentioned once in his 44-page decision, nor is the causation of Dolan’s squamous cell carcinoma even remotely addressed by his ruling. Under these circumstances it is improper to use his decision to preclude further litigation on the issue of Dolan’s cancer.
III. Dolan’s Expert Witnesses
Defendants’ final ground for summary judgment, as well as the basis for their other motions, is the alleged scientific insufficiency of the opinions of the two expert witnesses Dolan intends to call at trial to establish a causal link between her exposure to the photocopiers at 99 Bedford Street in 1989 and the development of her tongue cancer in 1992. The defendants argue that the opinions of these two witnesses, Drs. Alan S. Levin and Vera S. Byers, lack sufficient scientific validity to be admitted into evidence at trial; therefore, the defendants contend, Dolan will be unable to prove the causation of her cancer, and summary judgment should be entered against her.[1]
The admissibility of scientific expert opinion in this commonwealth is governed by Commonwealth v. Lanigan, 419 Mass. 15 (1994), known as Lanigan II. In Lanigan II, a criminal case, the Supreme Judicial Court addressed the admissibility of DNA evidence. Following the U.S. Supreme Court’s ruling in Daubert v. Merrell. Dow Pharmaceuticals, Inc., 113 S.Ct. 2786 (1993), the SJC abandoned the old Frye test, which limited admissibility of expert opinion to those theories that have attained “general acceptance” in the scientific commu-nily. In Lanigan II, the Court adopted a more lenient standard, under which the trial judge is to assume “a gatekeeper role” with respect to admissibility.
. . . the judge must rule first on any challenge to the validity of any process or theory underlying a proffered opinion. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.’... a proponent of scientific opinion evidence may demonstrate the reliability or validity of the underlying scientific theoiy or process . .. without establishing general acceptance.
419 Mass. at 26.
The “underlying scientific theory” at issue in this case may be stated succinctly: it is the theoiy that Dolan’s exposure to the photocopiers at 99 Bedford Street caused her tongue cancer. Dolan intends to support this theoiy of the causation of her injuries through a two-step process: first, by establishing what she terms “general causation,” i.e., that the photocopiers at issue produced certain harmful chemicals capable of causing her cancer; and second, by establishing “specific causation”— "i.e., that Plaintiffs exposure to such chemicals in the poorly ventilated environment [at 99 Bedford Street] over an eight month period more likely than not caused her squamous cell carcinoma of the tongue ..." Plaintiff’s Memorandum of Law in Support of Its Opposition to-Defendant, Eastman Kodak’s Motion for Summary Judgment, August 30, 1995, at 3. It is Drs. Levin and Byers whom Dolan plans to call upon to testify to this so-called “specific causation.”
The question, therefore, becomes whether this proffered opinion evidence is sufficiently valid as a matter of science to be presented to the jury. The court concludes that it is not.
Dolan has cited twelve bases for the conclusion of Drs. Levin and Byers:
(1) a complete and thorough review of plaintiffs medical records and medical history to identify symptomology and the temporal onset of her injuries, (2) an extensive physical examination of the plaintiff, (3) in depth consultation with plaintiffs treating physicians, (4) review of all laboratory tests performed by Plaintiffs treating physicians, (5) a complete and thorough assessment of plaintiffs familial medical history as it relates to cancer, (6) a personal visit to plaintiffs home residence to observe the environment for potential other sources of chemical toxins, (7) a review of the analysis of plaintiffs home water supply to rule out other sources of toxins, (8) an in depth consultation with the industrial hygienist in this matter to assess the work place environment to establish the presence of toxic chemicals and the substandard air qualify conditions as it relates to concentrations of toxic chemicals, (9) a review of the toxicological data relative to the toxicity of the particular chemicals known to emit from the photocopy process, (10) confirmation that the plaintiff did not present the typical causative factors associated with the dis *660 ease process, in this case alcohol and tobacco use, (11) a review of the pathology slides taken with respect to plaintiffs cancer, and (12) an extensive review of the published medical literature and studies establishing the carcinogenic, toxic and adverse health effects associated with human exposure to the particular chemicals known to emit from the photocopy process.
Memorandum of Law at 12-13.
In short, Dolan argues,
Drs. Levin and Byer’s (sic) extensive analysis of plaintiffs condition, their review of medical literature on her condition, the specific elimination of other potential causes of her condition, together with the application of their vast experience and knowledge in the field of cancer etiology, is the standard, routine, and well-recognized manner or methodology which physicians undertake in formulating a diagnosis or opinion as to what caused or contributed to the onset of a patient’s cancer.
Id. at 13. In so arguing, she mistakes the nature of the Daubert/Lanigan II analysis. Dolan’s position is that because her experts are qualified medical professionals who have reviewed the circumstances of her cancer, they must be permitted to testify to their theory that the copy machines at 99 Bedford Street were its cause. But despite Drs. Levin and Byers’s willingness to draw this conclusion, there is simply not sufficient scientific evidence that copy machines can cause cancer to allow them to so testify in a court of law.
There is indeed some circumstantial evidence in the case from which it is inferable that the copiers caused Dolan’s cancer — the temporal relation between her exposure and her illness; the fact that the copiers did apparently emit some toxic chemicals; the fact that the known risk factors for tongue cancer — smoking or use of tobacco and excessive alcohol use — are not present in this case. But in the utter absence of any scientific studies linking photocopier exposure to cancer — an absence that Dolan concedes — this court cannot allow expert witnesses to testify to such a link in this case.
In Lanigan II, the Supreme Judicial Court listed several factors that should influence a trial judge’s decision on the admissibility of expert scientific testimony:
. . . general acceptance . . . [is] a relevant factor . . . [also] relevant [is] the question whether the theoiy or technique can be or has been tested . . . [p]eer review and publication of the theory or process is pertinent but. . . not. . . indispensable .. ."
419 Mass. at 25. It is evident that the theoiy of causation put forth by Drs. Levin and Byers cannot meet any of these tests; such a theory, from what appears in the record before the court, has never previously been proposed, much less generally accepted by the scientific community; being novel, it has not been tested, nor has it been subjected to peer review.
Dolan has also attempted indirectly to link her cancer to the photocopiers by establishing that they emitted certain known carcinogens, the exposure to which could have caused her cancer. However, she has not presented any evidence to suggest that any of the toxins allegedly produced by the copiers were produced in quantities that have ever previously been linked to cancer.
Dolan repeatedly returns to the argument that Drs. Levin and Byers have followed usual medical procedure in evaluating her condition — they have reviewed her records, attempted to eliminate alternative explanations, and drawn a conclusion based on all the information before them. But however sound this approach to ascertaining the etiology of her cancer may be, it cannot by itself guarantee the admissibility of a theory as to that etiology that is at present scientifically unreliable. As the court noted in Whiting v. Boston Edison Co., 891 Mass. 12 (D.Mass. 1995), an expert opinion that rests on a scientifically unreliable theoiy cannot be admitted into evidence, regardless of the methodology the expert employed in reaching the unreliable conclusion. The theoiy of Drs. Levin and Byers, while not entirely implausible, must await greater evidence of its scientific validity than currently exists before it can be presented to a jury.
ORDER
For the foregoing reasons, the Motion of the Defendants, Bedford Building Associates, A Limited Partnership, and Bay Management Group, Inc., for Summary Judgment is ALLOWED, and Defendant Eastman Kodak Company’s Motion for Summary Judgment is also ALLOWED.

Given this court’s ruling that Dolan’s claim for immune system damage is barred by the statute of limitations, there is no need to address the defendants’ challenges to the scientific validity of Dolan’s experts for that portion of her case.